# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH CRISTOPHER YOUNG, aka
Joseph Christopher Young,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,

                    *Respondent.*

No. 07-70949

Agency No.
A035-029-889

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted En Banc
December 12, 2011—San Francisco, California

Filed September 17, 2012

Before: Alex Kozinski, Chief Judge, Mary M. Schroeder,
Betty B. Fletcher, Harry Pregerson, Andrew J. Kleinfeld,
Susan P. Graber, Raymond C. Fisher, Richard A. Paez,
Richard R. Clifton, Carlos T. Bea, and Sandra S. Ikuta,
Circuit Judges.

Opinion by Judge Graber;
Partial Concurrence and Partial Dissent by
Judge B. Fletcher
Partial Concurrence and Partial Dissent by Judge Ikuta

11273

**COUNSEL**

Katherine Mayer Mangan, Mayer Mangan, APLC, San Diego, California; Robert W. Perrin, Latham & Watkins LLP, Los Angeles, California, for the petitioner.

Bryan S. Beier, Senior Litigation Counsel, United States Department of Justice, Washington, D.C., for the respondent.

Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the amici curiae.

**OPINION**

GRABER, Circuit Judge:

Petitioner Joseph Young petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming a final order of removability. The BIA held that Petitioner is ineligible for cancellation of removal because he has been convicted of an aggravated felony. With a differently configured majority concurring as to each of the following issues, we hold:

(1) Petitioner failed to exhaust the claim that his conviction was not for a violation of a law relating to a controlled substance within the meaning of 8 U.S.C. § 1227(a)(2)(B)(i). We therefore lack jurisdiction over that claim.

(2)   The evidentiary limitations articulated in *Shepard v. United States*, 544 U.S. 13, 26 (2005), apply when determining, under the modified categorical approach, whether a prior conviction renders an alien ineligible for cancellation of removal as an aggravated felon under 8 U.S.C. § 1229b.

(3)   Under the modified categorical approach, a guilty plea to a conjunctively phrased charging document establishes only the minimal facts necessary to sustain a defendant's conviction. In other words, when a conjunctively phrased charging document alleges several theories of the crime, a guilty plea establishes a conviction under at least one, but not necessarily all, of those theories. In so deciding, we reconcile our inconsistent precedents on this issue by adopting one line of cases—including *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1082 n.3 (9th Cir. 2007)—and rejecting the other, including *United States v. Snellenberger*, 548 F.3d 699, 701 (9th Cir. 2008) (en banc) (per curiam).

(4) An alien cannot carry the burden of demonstrating eligibility for cancellation of removal by merely establishing that the relevant record of conviction is inconclusive as to whether the conviction is for an aggravated felony. We overrule *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1130-31 (9th Cir. 2007), and *Rosas-Castaneda v. Holder*, 655 F.3d 875, 883-84 (9th Cir. 2011), to the extent that they conflict with this holding.

Applying those four holdings to the facts of this case, as we will explain below, we dismiss the petition in part and deny it in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Joseph Young is a native and citizen of St. Kitts and Nevis. He became a lawful permanent resident of the United States in 1977.

In February of 2005, Petitioner pleaded guilty to "Sale/ Transportation/Offer to Sell" cocaine base in violation of California Health & Safety Code section 11352(a).[1] He received a sentence of three years' imprisonment.

Soon thereafter, the government issued a Notice to Appear, charging Petitioner with removability both as an alien convicted of an offense relating to a controlled substance, 8 U.S.C. § 1227(a)(2)(B)(i),[2] and as an alien convicted of an aggravated felony related to illicit trafficking in a controlled substance, *id.* § 1227(a)(2)(A)(iii).[3]

---

[1]California Health & Safety Code section 11352(a) states:

> Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport (1) any controlled substance specified in subdivision (b), (c), or (e), or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, four, or five years.

[2]Title 8 U.S.C. § 1227(a)(2)(B)(i) states:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

[3]Title 8 U.S.C. § 1227(a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

An aggravated felony is defined by 8 U.S.C. § 1101(a)(43)(B), which states in pertinent part: "The term 'aggravated felony' means . . . (B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)[.]"

At the immigration hearing, the government produced a copy of the electronic court docket in California Case No. BA270389 and a felony complaint and information in the same case. Count 1 of the information charged:

> On or about August 26, 2004, in the County of Los Angeles, the crime of SALE/ TRANSPORTATION/OFFER TO SELL CONTROLLED SUBSTANCE, in violation of HEALTH & SAFETY CODE SECTION 11352(a), a Felony, was committed by JOSEPH CHRISTOPH [sic] YOUNG, who did unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, COCAINE BASE.

Thus, the information tracked the wording of section 11352(a) in its entirety, except that the charge used the conjunctive "and," whereas the statutory text uses the disjunctive "or." The court records show that Petitioner pleaded guilty to Count 1. At the immigration hearing, he also admitted the factual allegations in the Notice to Appear.

Following the hearing, the immigration judge ("IJ") held that Petitioner was removable on both grounds charged in the Notice to Appear. With respect to the aggravated felony ground, the IJ ruled that Petitioner's guilty plea to Count 1 of the information constituted a plea "to each and every allegation," including the sale of cocaine, because Count 1 had been charged in the conjunctive. Accordingly, the IJ held that Petitioner was ineligible for cancellation of removal and ordered him removed.

The BIA affirmed in a reasoned opinion. Noting that Petitioner had failed to challenge the IJ's holding that he was

removable for a controlled substance conviction, the BIA upheld his removal on that ground. The BIA did not address whether Petitioner was also removable for an aggravated felony conviction.

Next, the BIA held that Petitioner was ineligible for cancellation of removal. Citing 8 U.S.C. § 1229a(c)(4) and 8 C.F.R. § 1240.8(d), the BIA observed that Petitioner had the burden of establishing his eligibility for cancellation, which thus required Petitioner to show that he had not been convicted of an aggravated felony. The BIA agreed with the IJ that, under Ninth Circuit precedent, the guilty plea to the conjunctively phrased Count 1 established every factual allegation contained therein. Analyzing the record before it, the BIA found no evidence that Petitioner had *not* been convicted of an aggravated felony.

Petitioner timely filed a petition for review. He makes two main arguments. First, he argues that the BIA erred in finding him removable for having been convicted of an offense relating to a controlled substance. Second, he challenges the BIA's ruling that he is ineligible for cancellation of removal because he was convicted of an aggravated felony.

STANDARDS OF REVIEW

Where, as here, the BIA conducts its own review of the evidence and law, our review is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Antonyan v. Holder*, 642 F.3d 1250, 1254 (9th Cir. 2011) (internal quotation marks omitted). We review de novo all questions of law, including whether a particular conviction qualifies as an aggravated felony. *Id.*; *Carlos-Blaza v. Holder*, 611 F.3d 583, 587 (9th Cir. 2010). We review factual findings for substantial evidence. *Antonyan*, 642 F.3d at 1254. The BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## DISCUSSION

A.  *We lack jurisdiction over the claim that Petitioner was not convicted of a controlled substance offense.*

Petitioner first contends that his conviction was not for a controlled substance offense. Specifically, he argues that California Health & Safety Code section 11352(a) regulates more substances than the federal Controlled Substances Act does. We must dismiss this claim.

We lack jurisdiction to consider the merits of a legal claim not presented to the BIA. *Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004). Presenting an argument to the BIA requires reasoning sufficient to put the BIA on notice that it was called on to decide the issue. *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam). A general challenge to the IJ's decision is insufficient; the alien must specify particular issues on appeal to the BIA. *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004).

Under those standards, Petitioner failed to alert the BIA to this issue. Although he points to certain statements in his brief to the BIA, those statements pertained only to his removability as an aggravated felon. Indeed, the sentences on which he relies are in the middle of a section titled "THE IMMIGRATION JUDGE ERRED IN FINDING THAT [PETITIONER] WAS CONVICTED OF AN AGGRAVATED FELONY." Taken as a whole and fairly read in context, neither the notice of appeal nor the brief to the BIA informed the BIA of a challenge to the controlled substance ground of removability. Therefore, we dismiss this unexhausted challenge.[4]

---

[4]Because the BIA found Petitioner removable only on the controlled substance ground, it did not reach the question whether he is removable for conviction of an aggravated felony. Neither do we.

B.  *The record of conviction is inconclusive as to whether the conviction was for an aggravated felony; thus, Petitioner has not carried the burden of establishing his eligibility for cancellation of removal.*

Petitioner next argues that the BIA erred in finding him to be an aggravated felon and thus ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3). We deny the petition for review on this claim.

1.  Shepard *limits the documents that we may consider.*

**[1]** In both criminal and immigration contexts, we often must inquire whether an individual's prior state conviction constitutes a conviction for a generic federal crime. *See, e.g.*, *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185-86 (2007) (applying, in the immigration context, the approach set forth in *Taylor v. United States*, 495 U.S. 575, 599-600 (1990), in the criminal sentencing context); *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 922 (9th Cir. 2011) (en banc) (per curiam) (Bybee, J., opinion) (noting that we "have extended that *Taylor/Shepard* framework" to a variety of contexts, including immigration). "The categorical and modified categorical frameworks, first outlined by the Supreme Court in [*Taylor*] establish the rules by which the government may use prior state convictions to enhance certain federal sentences and to remove certain aliens." *Aguila-Montes de Oca*, 655 F.3d at 917.

**[2]** Under the categorical approach, we "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor*, 495 U.S. at 602; *see also Kawashima v. Holder*, 132 S. Ct. 1166, 1172 (2012) ("[W]e employ a categorical approach by looking to the statute defining the crime of conviction, rather than to the specific facts underlying the crime."). In applying the categorical approach, we " 'compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by

the statute [of conviction] is broader than the generic federal definition.' " *Cortez-Guillen v. Holder*, 623 F.3d 933, 935 (9th Cir. 2010) (alteration in original) (quoting *Cerezo v. Mukasey*, 512 F.3d 1163, 1166 (9th Cir. 2008)).

**[3]** Here, the statute of conviction, California Health & Safety Code section 11352(a), is admittedly broader than the generic federal crime because it encompasses some conduct outside the definition of the federal crime. An "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43)(B) as "including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 11352(a), however, criminalizes the mere solicitation of, or offer to sell, a controlled substance, which is not an aggravated felony, *Levya-Licea v. INS*, 187 F.3d 1147, 1150 (9th Cir. 1999), as well as the sale of cocaine, which is one. Under the categorical approach, therefore, Petitioner's conviction does not qualify as an aggravated felony.

**[4]** When, as here, the state statute of conviction criminalizes a broader range of conduct than the generic federal crime, we employ the "modified categorical approach," which requires us to determine whether "a jury was *actually required* to find all the elements" of the generic federal crime. *Aguila-Montes de Oca*, 655 F.3d at 920 (internal quotation marks omitted). When applying the modified categorical approach in the context of a guilty plea, we must "determine whether a guilty plea to an offense defined by a nongeneric statute *necessarily admitted* elements of the generic offense." *Id.* at 921 (emphasis added) (internal quotation marks omitted).

**[5]** In *Shepard*, 544 U.S. at 26, the Supreme Court imposed evidentiary limitations on the types of documents that we may consider under the modified categorical approach; we may review only the charging instrument, transcript of the plea colloquy, plea agreement, and comparable judicial record of this information. *Id.* That holding applies here.

The dissent on this point would hold that, when determining eligibility for cancellation of removal, the IJ should be able to consider evidence beyond the documents allowed under *Shepard*. Judge Ikuta's dissent at 11306, 11315. The dissent relies heavily on *Nijhawan v. Holder*, 557 U.S. 29 (2009), to reach that conclusion. But in *Nijhawan*, the Supreme Court allowed inquiry beyond the *Shepard* documents only after it held that the statutory text demanded a circumstance-specific inquiry, rather than a categorical one.[5] *Id.* at 40. As we have previously observed, in *Nijhawan*, "[t]he Court held that the provision calls for a 'circumstance-specific,' not a 'categorical,' interpretation." *Aguila-Montes de Oca*, 655 F.3d at 921 (internal quotation marks omitted). For that reason, the Court rejected the application of the modified categorical approach and held that, in determining whether a previous conviction met the $10,000 threshold, the immigration court need not observe the evidentiary limitations articulated in *Shepard*. *Id.* Under *Nijhawan*, then, a fact-specific approach is appropriate only when the statute refers to "the specific circumstances in which a crime was commit-

---

[5]In *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2586 n.11 (2010), the Supreme Court recognized the narrowness of its holding in *Nijhawan*:

> Our decision last Term in *Nijhawan* . . . rejected the so-called categorical approach . . . when assessing whether, under 8 U.S.C. § 1101(a)(43)(M)(i), a noncitizen has committed "an offense that . . . involves fraud or deceit in which the loss to the . . . victims exceeds $10,000." Our analysis was tailored to the "circumstance-specific" language contained in that particular subsection of the aggravated felony definition. And we specifically distinguished the "generic" categories of aggravated felonies for which a categorical approach might be appropriate— including the "illicit trafficking" provision—from the "circumstance-specific" offense at hand. Moreover, . . . there was no debate in *Nijhawan* over whether the petitioner actually had been "convicted" of fraud; we only considered how to calculate the amount of loss once a conviction for a particular category of aggravated felony has occurred.

(Citations omitted.)

ted," *id.* (internal quotation marks omitted), but the modified categorical approach—with its attendant evidentiary limitations—continues to apply when the statute refers to generic crimes.

**[6]** Unlike in *Nijhawan*, the statutory text at issue here provides no justification for abandoning the now-traditional modified categorical approach in favor of a "circumstance-specific" inquiry. *See Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2586 (2010) (holding that, to determine eligibility for cancellation of removal, the focus of the inquiry is on the prior "conviction itself," not on the circumstances surrounding the conviction, and suggesting that the categorical approach is appropriate to determine whether a prior conviction qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(B), the provision at issue here). Instead, § 1229b requires a legal assessment of whether the prior crime of conviction constitutes a generic federal offense. 8 U.S.C. § 1229b(a)(3). In answering that question, we may not consider whether the conduct underlying the prior conviction potentially could meet the elements of a federal generic offense, but must, instead, determine the elements upon which the conviction *necessarily* rested. *Aguila-Montes de Oca*, 655 F.3d at 920-21.

If anything, the Supreme Court's reasoning for why *Shepard* did not apply in *Nijhawan* supports the application of *Shepard* here. The Court explained that *Shepard* had no application to a circumstance-specific inquiry because *Shepard* "developed the evidentiary list . . . for [the purpose] of determining which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction." *Nijhawan*, 529 U.S. at 41. "[W]hich statutory phrase . . . covered a prior conviction," *id.*, is precisely the inquiry before us here.

The dissent also points to 8 U.S.C. § 1229a(c)(4)(B) to support the position that the *Shepard* evidentiary limitations do

not apply. Judge Ikuta's dissent at 11305-06. But that provision merely allows the IJ to require corroborative evidence for *testimony* presented by the applicant, even when the witness is deemed credible.[6] 8 U.S.C. § 1229a(c)(4)(B); *Rosas-Castaneda*, 655 F.3d at 884-85. It says nothing about opening the door for additional evidence to supplement the *documentary record* of conviction allowed under *Shepard*. Thus, nothing in the text of the statute suggests that courts may depart from the usual categorical and modified categorical approaches when determining whether a prior conviction precludes eligibility for cancellation of removal. Moreover, in explaining the modified categorical approach, the Supreme Court has emphasized the importance of strictly limiting the inquiry. *See, e.g.*, *Shepard*, 544 U.S. at 23 (holding that strict evidentiary limitations were "the heart" of the framework created in *Taylor*).

Finally, even the dissent agrees that the modified categorical approach applies here and that the IJ must "adjudicate only the nature of the conviction." Judge Ikuta's dissent at 11316-17, 11319-20. But the additional evidence that the dissent would have the IJ consider is largely irrelevant to the question that matters for the modified categorical approach. Under the modified categorical approach, determining the nature of the conviction means deciding which elements a jury "was actually required to find" or which elements the guilty plea "necessarily admitted." *Aguila-Montes de Oca*, 655 F.3d at 920-21 (emphasis omitted). Extraneous evidence, such as police reports or the alien's testimony, cannot answer that precise legal question.

---

[6]Aliens have the burden of establishing many requirements to demonstrate eligibility for cancellation of removal, and they may introduce testimony to establish, for instance, that they had "good moral character during" their presence in the United States or "that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child." 8 U.S.C. § 1229b(b)(1).

Accordingly, in conducting the modified categorical analysis to determine whether Petitioner was convicted of an aggravated felony, we may rely only on the documents allowed under *Shepard*.

2.  *Under the modified categorical approach, a guilty plea to a conjunctive count does not necessarily admit every possible version of the crime.*

**[7]** Under the *Shepard* limitations, the only relevant document before the BIA was the criminal information. To reiterate, it alleged that Petitioner

> did unlawfully transport, import into the State of California, sell, furnish, administer, and give away, and offer to transport, import into the State of California, sell, furnish, administer, and give away, and attempt to import into the State of California and transport a controlled substance, to wit, COCAINE BASE.

The question thus becomes whether, under the modified categorical approach, Petitioner's guilty plea constitutes an admission of transporting, importing, selling, furnishing, administering, *and* giving away cocaine, *and* offering or attempting to do those things, or whether, instead, it simply establishes that he was convicted for at least *one* of those acts. In other words, if a defendant pleads guilty to "A and B," where either "A" or "B" is sufficient to sustain a state conviction but only the commission of "A" would constitute a generic federal offense, then, under the modified categorical approach, did the defendant necessarily admit both "A" and "B"?

**[8]** A threshold consideration is whether we are to answer that question under federal law or under state law. We hold that federal law principles determine the effect of a guilty plea under the modified categorical approach. To apply the dispa-

rate rules of the many possible convicting jurisdictions—potentially from each of the 50 states, the territories, and many foreign countries—would undermine the principles of uniformity and simplicity that led the Supreme Court to adopt the categorical approach in *Taylor*. *See Aguila-Montes de Oca*, 655 F.3d at 964 (Berzon, J., concurring in judgment) (observing that applying state procedural rules to determine whether non-elemental facts are admitted by a defendant's guilty plea adds a "layer of *dis* uniformity in the application of the modified categorical approach"). Moreover, applying federal principles rather that state law rules to determine the effect of a guilty plea conserves judicial resources and prevents inter-circuit splits over the interpretation of state procedural rules.[7] We turn, then, to our inconsistent precedents, which implicitly applied federal law as we now explicitly do.

[9] Our jurisprudence contains two lines of cases, each providing a different approach. *Compare Snellenberger*, 548 F.3d at 701 (holding that a guilty plea to a conjunctively phrased information constitutes an admission of all the allegations contained therein),[8] *with Malta-Espinoza*, 478 F.3d at

---

[7]We still may look to state law to understand the meaning of a state-specific type of plea to a state criminal charge. For example, in *United States v. Vidal*, 504 F.3d 1072, 1087 (9th Cir. 2007) (en banc), we relied on California law to determine that, "in the context of a *People v. West* plea [in a California state court], a court is not limited to accepting a guilty plea only to the offense charged but can accept a guilty plea to any reasonably related lesser offense." (Internal quotation marks and brackets omitted.) In other words, we consulted state law to understand that a *West* plea might constitute a guilty plea to one of several offenses, including conduct other than that alleged in the charging document. *Id.* at 1088. Whether a guilty plea to an overly inclusive conjunctive charge suffices to establish conviction for a generic federal crime is, however, a question of federal law.

[8]*See also Aguila-Montes de Oca*, 655 F.3d at 945 (concluding, without analysis, that "[w]hen a defendant pleads guilty to a count, he admits the factual allegations stated in that count"); *United States v. Williams*, 47 F.3d 993, 995 (9th Cir. 1995) ("When a defendant pleads guilty . . . to facts stated in the conjunctive, each factual allegation is taken as true."

1082 n.3 (holding that a guilty plea to a conjunctively phrased charging document alleging several theories of the crime does not constitute an admission to all of the alternate theories).**⁹** We now adopt the *Malta Espinoza* line of cases and hold that, under the modified categorical approach, when a conjunctively phrased charging document alleges several theories of the crime, a guilty plea establishes conviction under at least one of those theories, but not necessarily all of them.

The nature of the modified categorical framework suggests that, when a defendant pleads guilty to a charging document alleging "A and B," that plea implies a conviction for "A" *or* "B." Under the modified categorical approach, we must "determine whether a guilty plea to an offense defined by a non-generic statute *necessarily* admitted elements of the generic offense." *Aguila-Montes de Oca*, 655 F.3d at 921 (emphasis added) (internal quotation marks omitted). We have held that a guilty plea "is an admission of each and every element required to establish the offense." *United States v. Kidder*, 869 F.2d 1328, 1332-33 (9th Cir. 1989). "The effect is the same as if appellant had been tried before a jury and had been found guilty on evidence covering all of the material facts."

_____

(citing *United States v. Mathews*, 833 F.2d 161, 164 (9th Cir. 1987)); *Mathews*, 833 F.2d at 163 ("The effect of a guilty plea is well established: it is an admission of all the elements of a formal criminal charge and conclusively admits all factual allegations of the indictment." (internal quotation marks and citation omitted)).

**⁹***See also Vidal*, 504 F.3d at 1088-89 (holding that a guilty plea to an overly inclusive charge does not establish that the defendant was convicted of a generic crime); *Penuliar v. Mukasey*, 528 F.3d 603, 612-14 (9th Cir. 2008) (same); *United States v. Forrester*, 616 F.3d 929, 945 (9th Cir. 2010) (noting that the court "declin[es] to treat guilty pleas as admitting factual allegations in the indictment not essential to the government's proof of the offense" (internal quotation marks omitted)); *United States v. Cazares*, 121 F.3d 1241, 1248 (9th Cir. 1997) (holding that the effect of a guilty plea is limited "to an admission of the facts essential to the validity of the conviction").

*United States v. Davis*, 452 F.2d 577, 578 (9th Cir. 1971) (per curiam).

But, when an indictment charges several theories of the same crime, proof of *any one* of those theories would be sufficient to establish the offense. When the underlying statute proscribes more than one act disjunctively, it is common for prosecutors to charge in the *conjunctive*, yet it is well established that, to prove such a charge, a prosecutor need only prove in the *disjunctive*—one version of the crime. *Malta-Espinoza*, 478 F.3d at 1082. In other words, when a statute proscribes "A or B," a prosecutor who indicts a defendant on a charge of "A and B" need only prove "A" *or* "B" in order to achieve a conviction. *See United States v. Booth*, 309 F.3d 566, 572 (9th Cir. 2002) ("When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those conjunctively charged acts may establish guilt.").

Thus, when an indictment charges several theories, admission of any one of those theories constitutes "an admission of each and every element required to establish the offense." *Kidder*, 869 F.2d at 1332-33. The implication is that

> allegations not necessary to be proved for a conviction . . . are not admitted by a plea. Any other rule would be inconsistent with the rationale underlying these decisions that the effect of a guilty plea is the same as if defendant had been tried before a jury and had been found guilty on evidence covering all of the material facts.

*Cazares*, 121 F.3d at 1247 (internal quotation marks and brackets omitted). The fact that a guilty plea admits all elements necessary to sustain a conviction does not imply that it also admits all unnecessary or duplicative elements charged as alternative theories of the crime.

Indeed, holding that pleading guilty to a charging document that alleges "A and B" necessarily admits "A" *and* "B" would create inconsistency in the application of the modified categorical framework to jury convictions and guilty pleas. We have held that, under the modified categorical approach, a defendant found guilty *by a jury* under an indictment alleging "A and B" was not necessarily convicted of both "A" and "B." *United States v. Espinoza-Morales*, 621 F.3d 1141, 1149-52 (9th Cir. 2010). In those circumstances, assuming that "A" would qualify as a predicate offense and "B" would not, the jury was not "*actually required* to find all the elements" of the generic crime, because the jury could have based its conviction on the defendant's commission of "B" alone. *Id.* at 1151 (emphasis added) (internal quotation marks omitted); *see id.* at 1149-50 (holding that the prior conviction for sexual battery did not fit the federal definition because, "[e]ven though the state charged [the defendant] in the conjunctive—with accomplishing the penetration by means of force, violence, duress, menace *and* fear—this charge could have supported a conviction based on duress alone"). Unless the jury's verdict form specified (or the jury instructions made clear) that the finding of guilt necessarily rested on the defendant's commission of "A," the conviction would not qualify as a predicate offense. *Id.* at 1150-52. Similarly, a defendant who *pleads guilty* to "A and B" should not be held to have necessarily admitted either allegation, unless other documents, such as the defendant's statements at the plea colloquy, establish a narrower basis for the conviction.

The foregoing conclusion comports with the decisions of our sister circuits that have considered the issue under federal law. The Third and Fourth Circuits have held that, under the modified categorical approach, a defendant who pleads guilty to "A and B" does not admit both "A" and "B." *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (en banc) (per curiam); *Valansi v. Ashcroft*, 278 F.3d 203, 214, 216-17 & n.10 (3d Cir. 2002). Instead, the plea establishes conviction for "A" or "B," so a record of conviction consisting solely of

the charging instrument would be inconclusive. *Vann*, 660 F.3d at 774; *Valansi*, 278 F.3d at 214, 216-17 & n.10. Of course, if the defendant admitted either "A" or "B" during the plea colloquy, that would constitute an admission of the particular conduct. *Cf. Valansi*, 278 F.3d at 214 (scrutinizing the plea colloquy to determine whether the defendant admitted fraudulent intent when the indictment charged the defendant with "intent to injure *and* defraud"). The Fifth Circuit has reached the same conclusion, although it has sometimes relied on state law to do so. *See United States v. Morales-Martinez*, 496 F.3d 356, 359-60 (5th Cir. 2007) (relying on state law); *see also Omari v. Gonzales*, 419 F.3d 303, 308 & n.10 (5th Cir. 2005) (apparently relying on federal law to hold that a defendant who pleads guilty to "interstate transportation of stolen, converted and fraudulently obtained property" does not necessarily admit to transporting fraudulently obtained property).

The Eighth and Tenth Circuits have reached the opposite conclusion, holding that pleading guilty to "A and B" necessarily establishes "A" and "B," but both courts relied on state law to reach that result. *United States v. Ojeda-Estrada,* 577 F.3d 871, 877 (8th Cir. 2009); *United States v. Torres-Romero*, 537 F.3d 1155, 1159-60 & n.2 (10th Cir. 2008). Because we have held that federal law applies to this issue, we do not find the Eighth and Tenth Circuits' decisions persuasive. Furthermore, *Federal Practice and Procedure* states that the "better rule" is the one that treats the plea as "an admission of only those facts that are essential to the conviction." 1A The Late Charles A. Wright et al., *Federal Practice and Procedure* § 172 (4th ed. 2012).

**[10]** In sum, when either "A" or "B" could support a conviction, a defendant who pleads guilty to a charging document alleging "A and B" admits only "A" or "B." Thus, when the record of conviction consists only of a charging document that includes several theories of the crime, at least one of which would *not* qualify as a predicate conviction, then the

record is inconclusive under the modified categorical approach.

**[11]** Applying that rule to this case reveals that the record is inconclusive as to whether Petitioner was convicted of an aggravated felony. Petitioner pleaded guilty to a conjunctively phrased indictment that alleged several theories of the crime, any one of which would have sustained a state conviction, but only some of which would constitute an aggravated felony. Because we cannot tell from the record of conviction whether Petitioner was convicted of selling cocaine, which is an aggravated felony under 8 U.S.C. § 1101(a)(43)(B), or merely of solicitation, which is not, Petitioner's record of conviction is inconclusive. *See Rosas-Castaneda*, 655 F.3d at 885 (holding that solicitation offenses do not constitute aggravated felonies under 8 U.S.C. § 1101(a)(43)(B)).

   3. *An inconclusive record of conviction does not satisfy*
      *Petitioner's burden to demonstrate eligibility for can-*
      *cellation of removal.*

**[12]** The REAL ID Act places the burden of demonstrating eligibility for cancellation of removal squarely on the noncitizen. 8 U.S.C. § 1229a(c)(4); 8 C.F.R. § 1240.8(d). Under the Act, the alien "shall have the burden of establishing that he or she is eligible for any requested benefit or privilege." 8 C.F.R. § 1240.8(d). Thus, "[i]f the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do *not* apply." *Id.* (emphasis added). To demonstrate eligibility for cancellation of removal, the petitioner must show that he or she "has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a)(3). By placing the burden on the alien to show that prior convictions do not constitute aggravated felonies, the REAL ID Act established that an inconclusive record of conviction does not demonstrate eligibility for cancellation of removal, notwithstanding our holdings to the contrary in

*Sandoval-Lua*, 499 F.3d at 1130, and *Rosas-Castaneda*, 655 F.3d at 886.

In the removal context, the government bears the burden of establishing deportablility. *Young Sun Shin v. Mukasey*, 547 F.3d 1019, 1024 (9th Cir. 2008). When the record of conviction is inconclusive, "the government has not met its burden of proof, and the conviction may not be used for purposes of removal." *Tokatly v. Ashcroft*, 371 F.3d 613, 624 (9th Cir. 2004). It makes equal sense that when the burden rests on the alien to show eligibility for cancellation of removal, an inconclusive record similarly is insufficient to satisfy the alien's burden of proof. *See Salem v. Holder*, 647 F.3d 111, 115-16 (4th Cir. 2011) (holding that an inconclusive record is insufficient to carry the alien's burden of demonstrating eligibility for cancellation of removal), *cert. denied*, 132 S. Ct. 1000 (2012); *Garcia v. Holder*, 584 F.3d 1288, 1289-90 (10th Cir. 2009) (same). *But see Martinez v. Mukasey*, 551 F.3d 113, 122 (2d Cir. 2008) (holding that an inconclusive record satisfies the alien's burden).

**[13]** This result comports with our general understanding of the burden of persuasion, which determines "which party loses if the evidence is closely balanced." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). The party who bears the burden runs "the risk of non-persuasion." *Overman v. Loesser*, 205 F.2d 521, 523 (9th Cir. 1953); *see also Black's Law Dictionary* 223 (9th ed. 2009) ("[B]urden of proof denotes the duty of establishing by a fair preponderance of the evidence the truth of the operative facts upon which the issue at hand is made to turn by substantive law." (internal quotation marks omitted)). Here, the critical inquiry is whether the alien was convicted of a predicate crime. Because the burden of proof rests on the alien, the alien must establish that he or she was *not* convicted of such a crime. If the evidence is "closely balanced," *Schaffer*, 546 U.S. at 56, the alien cannot carry that burden. By demonstrating that the record of conviction is inconclusive, the alien has failed to

establish the absence of a predicate crime. Instead, the alien has simply demonstrated that the evidence about the nature of the conviction is in equipoise. The alien therefore cannot carry the burden of proof with an inconclusive record.

The dissent on this point argues that it is unfair to require aliens to demonstrate that they have not been convicted of a predicate crime and to require them to rely only on certain state court records in doing so. Although some aliens will surely face challenges using only the *Shepard* documents to prove that they were not convicted of a predicate crime, that result is not so absurd that Congress could not have intended it. The dissent's contrary conclusion boils down to its belief that, because of the imbalance of power between the alien and the state, the alien should receive the benefit of the doubt when the record is inconclusive. But the plain text of the statute dictates otherwise. By definition, the party who bears the burden of proof does not get the benefit of the doubt. Here, Congress has placed the burden on the alien; to give the alien the benefit of the doubt would thus contravene Congress' plainly expressed intent.

**[14]** In summary, the REAL ID Act makes clear that the alien bears the burden of demonstrating eligibility for cancellation of removal. It would be inconsistent with our general understanding of the burden of proof to allow the alien to meet that burden by establishing only an inconclusive record. To the extent that *Sandoval-Lua* and *Rosas-Castaneda* allow the alien to do so, they are hereby overruled. A petitioner cannot carry the burden of demonstrating eligibility for cancellation of removal by establishing an inconclusive record of conviction.

**[15]** Applying that rule to this case, it is clear that Petitioner has failed to meet his burden of demonstrating eligibility for cancellation of removal. The record of conviction, as discussed above, is inconclusive, because Petitioner pleaded guilty to a charging document alleging 14 different theories of

how he could have violated California Health & Safety Code section 11352(a), some—but not all—of which would qualify as aggravated felonies. It is possible that Petitioner's prior conviction constitutes an aggravated felony; it is also possible that it does not. But Petitioner bears the burden of demonstrating that he was *not* convicted of an aggravated felony, and he has failed to do so. The BIA therefore correctly denied Petitioner's application for cancellation of removal.

PETITION DISMISSED IN PART, DENIED IN PART.

---

B. FLETCHER, Circuit Judge, concurring in part and dissenting in part, with whom SCHROEDER, PREGERSON, FISHER, and PAEZ, Circuit Judges, join:

I join the majority opinion except as to discussion section B.3. I respectfully dissent from the court's decision to overrule *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1130-31 (9th Cir. 2007), and *Rosas-Castaneda v. Holder*, 655 F.3d 875, 883-84 (9th Cir. 2011). The majority view on this issue leads to a result that is unjust to lawful permanent residents seeking cancellation of removal and that Congress cannot have intended.

Our opinion in *Sandoval-Lua* is thorough and well-reasoned. In it we considered whether a lawful permanent resident who was removable based on a conviction for a controlled substance offense could seek cancellation of removal. *Sandoval-Lua*, 499 F.3d at 1123-24. We began by determining that Sandoval-Lua's California conviction (under a statutory provision virtually identical to the one under which Young was convicted) was not categorically an aggravated felony because the California statute criminalizes conduct not covered by the federal Controlled Substances Act. *Id.* at 1128. Next, we turned to the modified categorical approach and found, as in Young's case, that the judicially noticeable docu-

ments were inconclusive as to the nature of Sandoval-Lua's conviction. *Id.* at 1129.

Finally, we held that Sandoval-Lua had "affirmatively proven under the modified categorical analysis that he was not necessarily 'convicted of any aggravated felony.' " *Id.* at 1130 (quoting 8 U.S.C. § 1229b(a)(3)). In doing so, we made clear that we had considered that Sandoval-Lua bore the burden of proof under 8 C.F.R. § 1240.8, but that under the categorical approach there are only two possible results: the record of conviction either establishes that the applicant was necessarily convicted of an aggravated felony or the record does not. *Id.* at 1131-32. We correctly explained that the evidentiary limits imposed by *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), are not merely practical—they also cabin the court's inquiry to the correct legal question, which is whether the lawful permanent resident has been "convicted" of an aggravated felony, *not* whether he engaged in conduct that falls within the definition of an aggravated felony. *Id.* at 1131-32; *see also Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2586 (2010) (explaining that the text of 8 U.S.C. § 1229b(a)(3) directs courts to determine the nature of the lawful permanent resident's conviction, not his conduct).

We recently considered whether the REAL ID Act changed *Sandoval-Lua*'s result, and we concluded that it did not. *Rosas-Castaneda*, 655 F.3d at 884. As we explained in *Rosas-Castaneda*, 8 U.S.C. § 1229a(c)(4)(A) merely codified the burden of proof imposed on the alien by 8 C.F.R. § 1240.8, which we carefully analyzed in *Sandoval-Lua*. *Id.* at 883-84; *see also* H.R. Rep. No. 109-72, at 169 (2005) (Conf. Rep.) ("The new paragraph also *codifies the current requirement* that an alien applying for relief or protection from removal bears the burden of satisfying the eligibility requirements for that relief or protection, and also that he or she merits the relief as a matter of discretion, if the relief is discretionary." (emphasis added)). We should adhere to our prior precedents

and hold that Young's inconclusive record of conviction carried his burden of proof.

For the reasons that the majority opinion elegantly sets out, it makes no sense to discard the categorical approach or *Shepard*'s limitation on the documents to be considered in determining whether a lawful permanent resident has been convicted of an aggravated felony. But I cannot agree that Congress intended that an application for cancellation of removal be decided on the basis of whether state court records happen to be sufficiently clear to prove a negative (i.e. that the lawful permanent resident was not convicted of an aggravated felony). Indeed, the clarity of state court plea or conviction records will often depend upon the habits and preferences of the individual trial judge and the clerk of the court. The decision to remove a lawful permanent resident from this country should not turn on the vagaries of state court record keeping.

Even in cases where there exist state court records conclusively showing that a conviction was not for an aggravated felony, applicants may be unable to obtain them for a variety of reasons—for example, because of language barriers, a lack of information about the court system, their detained status, or an inability to pay fees for copies of court records. In contrast, the government has access to such documents. As Young points out, the law frequently places the burden of production on the party in the better position to obtain the evidence, even when the opposing party bears the burden of proof.[1] *See, e.g.*, *United States v. Cortez-Rivera*, 454 F.3d 1038, 1041 (9th Cir. 2006) ("Burdens are generally placed on the party who is in

---

[1] The term "burden of proof" encompasses "two separate burdens: the 'burden of persuasion' (specifying which party loses if the evidence is balanced), as well as the 'burden of production' (specifying which party must come forward with evidence at various stages in the litigation)." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245 n.4 (2011). That the government bears the burden of production does not shift the burden of persuasion, which still rests with the applicant.

the best position to present the evidence."); *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001). Our current rule effectively does just that, by creating an incentive for government attorneys to obtain all relevant conviction documents and provide them to the IJ in removal proceedings. Under the majority's approach, however, the government may produce only minimal state court records sufficient to show that a person is removable on some ground other than conviction for an aggravated felony—for example, conviction for a drug crime. The burden then shifts to the legal permanent resident to prove a negative—that he has not been convicted of an aggravated felony. *See* 8 C.F.R. § 1240.8(d). The government can stand by as the lawful permanent resident attempts to produce further records of conviction, which the government may already have or be able to obtain more easily.

Young's case illustrates the mischief that the majority's rule will work. The government submitted to the IJ records relating to Young's two California drug convictions. Those records were insufficient to establish that Young had been convicted of an aggravated felony under the modified categorical approach. After the panel decided this case, the government obtained a transcript of Young's 2005 guilty plea. Contrary to the government's assertions, there was no reason it could not have obtained the transcript six years ago and presented it to the IJ in order to establish that Young was convicted of an aggravated felony. If the government had done so, it would have increased the reliability of the administrative decision in this case and likely avoided years of appellate litigation.

My concern, however, is what will happen in a future case where a transcript or other state court record contains information helpful to a pro se detained immigrant. Suppose a lawful permanent resident pleaded guilty to a charging document alleging that he did A and B, where only B would constitute an aggravated felony. There is a plea transcript that makes

clear that the lawful permanent resident pleaded guilty to A but not B. If the government does not produce that transcript, which its attorneys may have no reason to do, how will the lawful permanent resident be able to locate it, or even know that it exists? That lawful permanent resident will be denied the opportunity to even try to show that he merits a favorable exercise of the attorney general's discretion through a grant of cancellation of removal. Congress cannot have intended such an arbitrary result.

*Sandoval-Lua* and *Rosas-Castaneda* harmonized § 1229a(c)(4) and § 1229b(a)(3) by placing the burden of proof squarely on the applicant for cancellation of removal, but requiring that the kind and quantum of evidence necessary to carry that burden be evaluated in light of the evidentiary limits imposed by the modified categorical approach. I would remain faithful to those well-reasoned precedents, which comport with the demands of fairness.

---

IKUTA, Circuit Judge, concurring in part and dissenting in part, with whom KLEINFELD, CLIFTON, and BEA, Circuit Judges, join:

In today's splintered decision, a two-judge "majority"[1] holds that Congress intended strict and arbitrary evidentiary

---

[1] It is useful to summarize how the voting has led us to this strange result. Seven judges (the two who join Judge Graber's opinion and the five who join Judge Fletcher's opinion) agree that the evidentiary limitations articulated in *Shepard v. United States*, 544 U.S. 13, 26 (2005), apply to aliens seeking to prove their eligibility for cancellation of removal. Six judges (the two who join Judge Graber's opinion and the four who join my opinion) agree that an alien cannot meet the burden of showing such eligibility by a preponderance of the evidence by simply establishing that the alien's record of conviction is inconclusive. Only two judges agree with both of these holdings, but the resulting pastiche forms the unconventional, and as I explain later, illogical, "majority."

limitations to be read into the cancellation of removal statute, despite the fact that the statute clearly states an alien's rights to introduce evidence and testimony. Correctly recognizing that the "majority's" holding is absurd, five judges have voted to alleviate the inherent unfairness by redefining the statutory language to mean the exact opposite of what it actually says. Both approaches are wrong: both are contrary to the plain language of the statute, and both reach outcomes that are neither contemplated by Congress nor dictated by common sense. I therefore dissent from the en banc decision as a whole, and I write separately to demonstrate why this confusion could have been avoided if we had just followed what the statute says.

I

The question before the court is whether the BIA erred in holding that Joseph Young, a lawful permanent resident, was ineligible for cancellation of removal under 8 U.S.C. § 1229b(a). Young asserts that even if he is removable, the BIA and IJ erred in concluding that he did not meet his burden of proving eligibility for cancellation of removal because he had necessarily been convicted of an aggravated felony. Young notes that section 11352(a) of the California Health & Safety Code,[2] his crime of conviction, criminalizes mere solicitation or offer to sell a controlled substance, which is not an aggravated felony, *see United States v. Rivera-Sanchez*, 247 F.3d 905, 908-09 (9th Cir. 2001) (en banc), as well as the sale of that substance, which is one. Because the relevant records do not establish that his conviction under section

---

[2]California Health & Safety Code § 11352(a) states, in pertinent part:

Except as otherwise provided in this division, every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport [a designated controlled substance] shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for three, four, or five years.

11352(a) was for selling a controlled substance (cocaine), as opposed to offering to sell it, Young argues that the record is inconclusive on the crucial question whether he was convicted of an aggravated felony, and therefore he remains eligible for cancellation of removal.

## A

Cancellation of removal is a form of relief that is granted and governed by the Immigration and Nationality Act (INA), and it is upon that statute that our analysis should focus. Under 8 U.S.C. § 1229b, the Attorney General may cancel removal of an alien who has been determined to be inadmissible or removable from the United States if the alien meets three statutory criteria. 8 U.S.C. § 1229b(a).[3] One of these criteria is that the alien not have been "convicted of any aggravated felony," *id.* § 1229b(a)(3), which is defined in § 1101(a)(43)(B) as "including a drug trafficking crime (as defined in section 924(c) of Title 18)." A conviction for the sale of cocaine (which is listed as offense conduct in section 11352(a)), qualifies as an "aggravated felony" because such an offense meets the federal definition of "drug trafficking crime" in 18 U.S.C. § 924(c).[4]

---

[3]With respect to eligibility for cancellation of removal, § 1229b(a) provides:

> The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—
>
> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

In addition, the alien must merit a favorable exercise of discretion. *See* 8 U.S.C. § 1229a(c)(4)(ii).

[4]Section 924(c)(2) defines a "drug trafficking crime" as including "any felony punishable under the Controlled Substances Act," codified at 21

The REAL ID Act of 2005 amended the INA to codify the procedures for reviewing an alien's application for cancellation of removal, adding 8 U.S.C. § 1229a(c)(4).[5] *See* Pub. L. No. 109-13, § 101(d), 119 Stat. 304. These amendments impose on the alien the burden of proving eligibility for cancellation of removal, including proving that the alien was not

---

U.S.C. § 801 et seq., which makes it unlawful to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," 21 U.S.C. § 841(a), and imposes a maximum term of imprisonment of at least twenty years when the violation involves a Schedule II substance such as cocaine, *see id.* § 841(b)(1)(C). *See also* 18 U.S.C. § 3559(a) (classifying as felonies offenses in which the maximum term of imprisonment is more than one year).

[5]8 U.S.C. § 1229a(c)(4) states, in pertinent part:

(4) Applications for relief from removal

(A) In general

An alien applying for relief or protection from removal has the burden of proof to establish that the alien—

(i) satisfies the applicable eligibility requirements; and

(ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

(B) Sustaining burden

The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

convicted of a drug trafficking crime that constitutes an aggravated felony. *See* 8 U.S.C. § 1229a(c)(4)(A) ("An alien applying for relief or protection from removal has the burden of proof to establish that the alien—(i) satisfies the applicable eligibility requirements."); *see also* 8 C.F.R. § 1240.8(d) ("If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.").

The INA grants an alien in removal proceedings the right "to present evidence on the alien's own behalf." 8 U.S.C. § 1229a(b)(4)(B). The REAL ID Act amendments further delineated the type of evidence that an alien may or must produce in order to carry the alien's burden of proving eligibility for cancellation of removal. *See id.* § 1229a(c)(4)(B). Section 1229a(c)(4)(B) allows and even requires the alien to introduce a wide range of "information" as well as documents to establish the nature of a prior conviction. Among other things, the statute requires the alien to "submit information or documentation . . . as provided by the instructions for the application form" for cancellation of removal (EOIR-42B). *Id.* The EOIR-42B application requires the applicant to "fully and accurately answer all questions," to provide responses "as detailed and complete as possible," and to attach "any documents that demonstrate your eligibility for cancellation of removal," including documents "which reflect" convictions. EOIR-42B, *available at* http://www.justice.gov/eoir/ eoirforms/eoir42b.pdf. Further, the application requires the applicant to attest to whether the alien has ever been convicted of any "felony, misdemeanor, or breach of any public law or ordinance" and to give a "brief description of each offense, including the name and location of the offense, date of conviction, any penalty imposed, any sentence imposed, and the time actually served." *Id.* By statute, the IJ is to consider all such information in determining the alien's eligibility for cancellation of removal. *See* 8 U.S.C. § 1229a(c)(4)(B) ("In determining whether the applicant has met [the] burden,

the immigration judge shall weigh the credible testimony along with other evidence of record."). The statute also contemplates that the alien may testify at the immigration proceedings, and it allows the IJ to require the applicant to "provide evidence which corroborates otherwise credible testimony." *Id.* Providing such corroborative evidence is excused only if "the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.*

Accordingly, the plain language of the statute requires the alien to carry the burden of proving eligibility for cancellation of removal, which includes establishing that the alien had not been convicted of an aggravated felony. The statute, however, also gives the alien the correlative right to introduce a full range of evidence to carry this burden.

### B

Under this cancellation of removal framework, Young had the burden to prove (among other things) that he had not been convicted of any aggravated felony. 8 U.S.C. § 1229a(c)(4); *see also* § 1229b(a)(3). Specifically, Young's record of conviction establishes that he was convicted for violating California Health & Safety Code § 11352(a). At least some ways of committing that offense qualify as aggravated felonies. Under the framework set out in 8 U.S.C. § 1229a, in order to carry his burden of proving that his conviction was not for a generic federal drug trafficking offense, Young must establish by a preponderance of the evidence that his conviction was for offering to sell cocaine, rather than selling it.

This leads to our central inquiry here: how should a court determine whether an alien has carried the burden of proving that a state conviction does not constitute an aggravated felony for purposes of the INA?

The Supreme Court originally addressed the issue of how to compare state convictions to generic federal offenses in the

context of criminal law. In *Taylor v. United States*, the Supreme Court considered the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which provides that a defendant is subject to a sentence enhancement if the defendant had three prior convictions for certain generic federal felonies. 495 U.S. 575, 578 (1990). The Supreme Court developed an analytic tool, now commonly referred to as the *Taylor* categorical approach, for determining if a state conviction qualified as a listed federal felony for purposes of ACCA. Under the categorical approach, a court must first derive from various sources the elements of the generic federal offense. *See id.* at 598-99. Next, the court must make a legal assessment as to whether the state statute of conviction is a categorical match to the generic federal offense. *See id.* at 599. This means that the court first compares the state statute to the generic federal offense to determine if (1) the state has adopted the generic federal definition or (2) the state statute criminalizes less conduct than does the generic federal offense. If so, "the conviction necessarily implies that the defendant has been found guilty of all the elements of [the generic offense]." *Id.*

If, on the other hand, the state statute criminalizes more conduct than is included in the generic federal crime, a court may use a modified categorical approach in making its legal assessment of whether the defendant had necessarily been found guilty of all the elements of the generic offense. *See United States v. Aguila-Montes de Oca*, 655 F.3d 915, 920 (9th Cir. 2011) (en banc). In other words, when a state statute explicitly or implicitly criminalizes several different ways to commit an offense, only some of which are included in the generic federal crime, a court may consider the particular acts the defendant committed in order to determine "which statutory phrase . . . covered a prior conviction." *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009); *see also Aguila-Montes de Oca*, 655 F.3d at 924-25, 937-38 (stating that if the record of conviction establishes that the factfinder necessarily determined that the defendant satisfied an element of an offense

through (for example) use of a particular weapon, "then the conviction 'necessarily rested' on this fact"). The court's inquiry is limited to determining the crime for which the defendant was necessarily convicted, not whether the defendant's underlying conduct could have been charged as a generic federal offense. *See Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2586 (2010); *see also Aguila-Montes de Oca*, 655 F.3d at 928 ("[I]t does not matter what acts the defendant *committed*; rather, the relevant question is what he was *convicted* of.").

Although the *Taylor* categorical approach and the modified categorical approach arose in the criminal context, the Supreme Court has also used these approaches in removal proceedings under § 1227(a)(2)(A)(iii) to determine whether an alien's prior conviction constitutes an "aggravated felony" as defined in § 1101(a)(43). In considering whether an alien's conviction for tax fraud qualified as an aggravated felony for purposes of deportability under § 1227(a)(2)(A)(iii), for instance, the Court clarified that it was using a "categorical approach by looking to the statute defining the crime of conviction, rather than to the specific facts underlying the crime." *See Kawashima v. Holder*, 132 S. Ct. 1166, 1172 (2012); *see generally Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) (assuming without deciding that the approach set forth in *Taylor* applied to determining whether an alien had committed an aggravated felony for analyzing removability under § 1227(a)(2)(A)).

In light of this legal framework, the method for analyzing Young's claim that he carried his burden of proving that his state conviction did not constitute an aggravated felony for purposes of the INA seems reasonably straightforward. Section 11352(a), the state statute of conviction in this case, criminalizes a list of offenses (such as selling, furnishing, administering, and giving away designated controlled substances) that constitute aggravated felonies for purposes of § 1227(a)(2)(B)(i)), as well as a list of offenses (such as offer-

ing to sell, furnish, administer, and give away those controlled substances) that do not. Accordingly, because section 11352(a) criminalizes more conduct than is included in the generic federal crime, a conviction under this section is not categorically an aggravated felony. Nevertheless, if Young's conviction necessarily rested on conduct (such as sale of cocaine) that would constitute an aggravated felony under § 1227(a)(2)(B)(i), he would still be ineligible for cancellation of removal.

At the immigration hearing, the government produced documents showing that Young's plea of guilty was to an indictment that listed the offenses in the conjunctive, including offenses that would qualify as aggravated felonies as well as those that would not. The IJ told Young that "one of your elements that you have to prove to show that you're eligible for cancellation of removal is that you do not have any aggravated felony convictions" and invited him to produce a state criminal court document showing that his felony was not an aggravated felony. As the hearing transcript shows, Young responded, "I pled guilty to one count of sale. I didn't ple[a]d guilty to trafficking or possession." Thus the IJ properly invited Young, as § 1229a(c)(4)(B) required, to introduce evidence to show that he had not been convicted of an aggravated felony. Young responded by testifying under oath that he had in fact pleaded guilty to sale of narcotics, which was an aggravated felony.

The BIA noted that Young had the burden to establish his eligibility for relief, and that he had submitted documents showing a request to the state criminal court for records that might arguably have had the potential to assist him in his claim, but the record did not show that he had received such records or sought to submit them in his proceedings before the IJ. The BIA recognized that Ninth Circuit law established the proposition that Young's own sworn admission that he had committed an aggravated felony could not be considered. Barred from the sensible course of relying on Young's sworn

statements, the BIA followed the more dubious path of treating Young's plea to a charge including both an aggravated and a non-aggravated felony as a plea to both. Because the evidentiary limitations imposed on the immigration court were erroneous, I would not reach Young's argument that pleading guilty to Count 1, which listed the offense conduct of § 11352(a) in the conjunctive, did not constitute a guilty plea to every offense listed in the indictment.

Because "a judicial judgment cannot be made to do service for an administrative judgment," *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943), we should remand to allow such additional development of the record as the BIA may find necessary, so that it may have the first opportunity to determine whether a preponderance of the evidence proves that Young has not been convicted of an aggravated felony. On remand, the BIA should not be required to disregard Young's own testimony under oath that his conviction was for selling narcotics. The BIA ought to be able to decide in the first instance whether to credit Young's admission that he had committed an aggravated felony, or conceivably such additional documents or testimony as he may produce to show that his admission was mistaken.

II

But the majority of my colleagues have rejected the simplicity and clarity of this approach for a single reason: they believe that an alien may not submit the full range of evidence allowed by § 1229a(c)(4)(B) when it comes to proving that a conviction was not an aggravated felony. In the ACCA context, the Supreme Court imposed strict evidentiary limitations, allowing courts conducting a modified categorical inquiry to consider only a "narrow and defined range of documents—the indictment, jury instructions, judicial findings, plea agreements, plea colloquies, and the like." *Aguila-Montes de Oca*, 655 F.3d at 938.[6] Judges Graber and Fletcher believe that

---

[6]The Supreme Court first defined this range of documents in *Shepard v. United States*, 544 U.S. 13, 16 (2005). We have further expanded the

these evidentiary limitations apply here and trump the statu-
tory language of the INA.

   Although both Judges Graber and Fletcher would ignore
the statute when it authorizes the IJ to consider a broad range
of evidence (and instead impose the ACCA evidentiary limi-
tations), they diverge as to the next step. Despite bypassing
the statute on the evidentiary issue, Judge Graber would
return to the statutory language when it requires placing the
burden of proof on the alien. *See* § 1229a(c)(4)(A). This
approach would require the alien to attempt to prove the
nature of a prior conviction without recourse to the alien's
own testimony or other probative evidence. Judge Fletcher, on
the other hand, would avoid the patent unfairness of Judge
Graber's approach by placing the burden of proof on the gov-
ernment, thus ignoring the statutory language on both points.

   As explained below, both of these approaches are wrong.
Rather than taking the convoluted approach the en banc
majority takes today, we should answer the question before us
merely by applying the plain language of the statute.

A

   The en banc majority goes wrong in erroneously assuming
that we must impose the ACCA evidentiary limitations in the
immigration context. Neither Congress nor the Supreme Court
has required us to do so. To the contrary, the Court derived
the ACCA evidentiary limitations from its statutory interpre-
tation of ACCA, which the Court read as allowing "only a
restricted look beyond the record of conviction." *Shepard*,
544 U.S. at 23. In reaching this conclusion, the Court indi-

list of judicially cognizable documents in *United States v. Snellenberger*,
548 F.3d 699 (9th Cir. 2008) (en banc), and other decisions. The complete
set of judicially cognizable documents is sometimes referred to as "*Shep-
ard* documents." *See, e.g.*, *Aguila-Montes de Oca*, 655 F.3d at 935.

cated that it would be implausible to interpret ACCA as requiring a court to engage in an adversarial process, involving witness testimony and review of prior trial transcripts, in order to determine conduct underlying a prior conviction. *Taylor*, 495 U.S. at 601-02. Moreover, such mini-trials are potentially susceptible to a constitutional challenge as abridging the right to a jury trial. *Id.* at 601. As a plurality of the Court later explained in more specific terms, "allowing a broader evidentiary enquiry" might permit the sentencing court to make "disputed finding[s] of fact," thus possibly conflicting with the rule enunciated in *Apprendi v. New Jersey* that a jury must make a finding "of any disputed fact essential to increase the ceiling of a potential sentence." *Shepard*, 544 U.S. at 24-25 (plurality opinion) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

The Court has been sensitive, however, to the different language and purpose of the INA as compared to ACCA, and thus it has not imposed the strict ACCA evidentiary limitations in every immigration context. *See, e.g.*, *Nijhawan*, 557 U.S. at 41-42. In *Nijhawan*, the Court considered whether an alien's convictions for conspiracy to commit mail fraud, wire fraud, bank fraud, and money laundering constituted aggravated felonies under the INA. *See id.* at 32. The INA defines "aggravated felony" as including an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Although the alien had stipulated that the loss in his case exceeded $100 million and the restitution order was for $683 million, the statute of conviction itself was silent as to loss. *See Nijhawan*, 557 U.S. at 32.

Rather than mechanically applying the modified categorical approach exactly as it was developed in the criminal context, the Court considered both the language of the INA and the context of the proceedings at issue. After carefully construing the INA's "aggravated felony" statute, 8 U.S.C. § 1101(a)(43), as well as the specific language of

§ 1101(a)(43)(M)(i), the Court determined that the INA differed from ACCA's provisions in material ways. *See Nijhawan*, 557 U.S. at 36-40. In light of these differences, the Court concluded that "Congress did not intend subparagraph (M)(i)'s monetary threshold to be applied categorically, *i.e.*, to only those fraud and deceit crimes generically defined to include that threshold," but instead intended the monetary threshold to apply "to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion." *Id.* at 40.

After deciding that the statutory language required the immigration court to evaluate the specific circumstances of an offense, the Court rejected the alien's argument that "reasons of fairness" should limit the court's consideration to the *Shepard* documents alone. *Id.* at 41-43. According to the alien, "any broader examination of the prior proceedings" by the IJ would "unfairly permit [the alien] to be deported on the basis of circumstances that were not before judicially determined to have been present and which he may not have had an opportunity, prior to conviction, to dispute." *Id.* at 41. But the Court concluded that while "the statute foresees the use of fundamentally fair procedures, including procedures that give an alien a fair opportunity to dispute a Government claim that a prior conviction involved a fraud with the relevant loss to victims," fairness did not require the ACCA evidentiary limitations that the alien proposed. *Id.* at 41. Instead, it expressed reliance on immigration judges' ability to "ascertain the nature of a prior conviction" without relitigating the conviction itself. *Id.* at 42.

*Nijhawan* also called into question whether ACCA evidentiary limitations necessary in the criminal context (where courts must protect the defendant's constitutional rights and the government must prove its case beyond a reasonable doubt) apply at all in the civil deportation context (which does not implicate these constitutional rights and in which the standard of proof is much lower). *See id.* at 41-42. The Court

noted that, unlike in the criminal context of *Taylor*, "a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim 'beyond a reasonable doubt.' " *Id.* at 42. Accordingly, after reviewing the statutory language and the particular context at issue, the Court allowed the immigration court to rely on the defendant's sentencing stipulation and the trial court's restitution order, non-*Shepard* documents that constituted clear and convincing evidence that the loss amount was more than $10,000. *See id.* at 42-43.

*Nijhawan*'s analytic approach thus strongly suggests that we should reconsider the assumption that the ACCA evidentiary limitations are applicable in every context. Rather, when operating outside a criminal proceeding, a court must consider whether it is necessary to adapt the *Taylor* approach to fit the specific language of the statute at issue and the civil context of an immigration proceeding.

### B

The considered analytic approach of *Nijhawan* is appropriate here. Although the Supreme Court has not yet addressed whether the ACCA evidentiary limitations are appropriate in the cancellation of removal context under § 1229b(a)(3), the specific statutory language of the cancellation of removal provisions, *see* 8 U.S.C. § 1229a(c)(4), as well as the civil context of immigration proceedings, weigh against applying the ACCA evidentiary limitations here.

We should begin our analysis with the statutory language. As described earlier, § 1229a(c)(4)(B) expressly delineates the type of evidence that an alien may or must produce in order to carry the alien's burden of proving eligibility for cancellation of removal. Rather than limiting the alien to a narrow range of Shepard documents, this section allows and even requires the alien to introduce a wide range of documents to establish the nature of a prior conviction. In making this determination, § 1229a(c)(4) directs the IJ to consider a range

of documents, the testimony of the alien and any witnesses, as well as ask for additional corroboration of this testimony as needed.[7] *See supra* at 11305-06.

The cancellation of removal context further supports such a reading. The statutory scheme governing cancellation of removal differs from ACCA in at least one important respect: the alien has the burden of proving eligibility for this form of relief. *See* 8 U.S.C. § 1229a(c)(4)(A); *see also* 8 C.F.R. § 1240.8(d). Unlike the criminal context or the removability determination, in both of which the government bears the burden of proving affirmatively that the alien's conviction does qualify for the enhancement at issue, Congress has placed the burden of proving eligibility for cancellation of removal squarely on the alien, who must prove that the conviction at issue is *not* an aggravated felony. Authorizing the alien to introduce and the IJ to consider a wide range of information, including testimony, gives the alien a reasonable opportunity to carry this burden. *See* 8 U.S.C. § 1229a(c)(4)(A), (B).

Accordingly, we should hold that the ACCA evidentiary limitations do not apply in the cancellation of removal context, and thus the alien is not limited to the *Shepard* documents in meeting the burden of showing that the alien has not been convicted of an aggravated felony. This means that Young should have the opportunity of introducing the evidence permitted under the INA to establish that his prior conviction was not a drug trafficking offense.[8] *See supra* at 11309-10.

---

[7]The assertion in Judge Graber's opinion that § 1229a(c)(4)(B) "merely allows the IJ to require corroborative evidence for *testimony* presented by the applicant," Graber opinion at 11286-87 (emphasis in original), is thus belied by the plain language of the statute itself.

[8]Judge Graber's statement that such evidence "is largely irrelevant to the question that matters for the modified categorical approach," Graber op. at 11287, misunderstands the "question that matters": whether Young had been convicted of an offense that constituted an aggravated felony. There is no reason why relevant non-*Shepard* evidence, such as Young's sworn testimony regarding what he was convicted of, is "[e]xtraneous" to answering this question. Graber op. at 11287.

## C

Young, as well as Judges Graber and Fletcher, offer a number of reasons for rejecting this approach and holding instead that the ACCA evidentiary limitations do apply in the cancellation of removal context. But these arguments do not withstand scrutiny.

First, Judge Graber asserts that despite the clear import of *Nijhawan*, its approach is not applicable here because § 1229a(c)(4) does not contain the language present in § 1101(a)(43)(M)(i), which indicated that Congress intended to apply a " 'circumstance-specific' inquiry." Graber op. at 11285. Her opinion contends that *Nijhawan* relaxed the ACCA evidentiary limitations only in this very limited circumstance and only because neither a categorical nor modified categorical analysis was appropriate. Graber op. at 11285-86.

This effort to limit *Nijhawan* to the narrowest possible reading of its facts misses the key point: *Nijhawan* establishes that the ACCA evidentiary limitations do not apply when Congress indicates otherwise in the text of the governing statute. *See* 557 U.S. at 37-38. Indeed, Judge Graber's opinion seems to overlook the entire section of *Nijhawan* where the Court discussed and rejected the petitioner's broader argument that, "for reasons of fairness," the ACCA evidentiary limitations should be applied notwithstanding the statute. *Id.* at 41-43.

Further, this cramped reading of *Nijhawan* overlooks the fact that the key policy reason suggested by the Supreme Court for imposing evidentiary limitations in the ACCA context, namely concerns regarding the risk of mini-trials to relitigate the criminal case, *see, e.g.*, *Taylor*, 495 U.S. at 601, do not arise in the civil setting of a cancellation of removal proceeding, where the alien need only prove by a preponderance of the evidence that the prior conviction was not an "aggra-

vated felony," *see* 8 C.F.R. § 1240.8(d). The IJ will not be adjudicating guilt or innocence, as guilt has already been determined in the prior criminal proceedings. Rather, the IJ, who is well-positioned to consider testimonial and documentary evidence, is required by statute to adjudicate only the nature of the conviction and is thus likely to come to a better conclusion by taking in more information and considering credibility and corroboration of testimony. *See In re Silva-Trevino*, 24 I. & N. Dec. 687, 702-03 (BIA 2008) ("Immigration judges are well versed in case management, and . . . the answer to a single question . . . may reveal a critical piece of information that is not in the record of conviction and that would ensure correct application of the [governing statute]."). Congress has demonstrated its confidence in the IJ's competence to make such decisions by designating the IJ as the central arbiter in this statutory scheme and even insulating the exercise of that authority from judicial review. *See* 8 U.S.C. § 1252(a)(2)(B)(i) ("[N]o court shall have jurisdiction to review" the granting of discretionary relief, including cancellation of removal).

Moreover, all these arguments in favor of applying the ACCA evidentiary limitations in the cancellation of removal setting are undercut by the flaw highlighted in Judge Fletcher's dissent: such evidentiary limitations, coupled with the statutory language putting the burden of proof on the alien, reach an unfair result that Congress could not have intended.

We have previously addressed this inequity, as Judge Fletcher would have us do here, by retaining the ACCA evidentiary limitations and effectively eliminating the alien's burden of proof. *See Sandoval-Lua v. Gonzales*, 499 F.3d 1121 (9th Cir. 2007). In *Sandoval-Lua*, which required us to apply pre-REAL ID Act law, we considered an alien's claim that the BIA erred in denying his application for cancellation of removal because his state conviction did not constitute an aggravated felony. *See id.* at 1123, 1126-27. Applying the *Taylor* categorical approach, *Sandoval-Lua* agreed that the

state crime of conviction was categorically broader than the applicable definition of an aggravated felony. *See id.* at 1128. Turning to the modified categorical approach, the court limited its analysis to the *Shepard* documents, which were inconclusive as to whether the alien had been convicted of a crime that qualified as an aggravated felony. *See id.* at 1129.

But the *Sandoval-Lua* court then recognized the potential unfairness inherent in making an alien prove the nature of prior state crimes while at the same time limiting the alien to the *Shepard* documents to try to meet that burden. To avoid this problem, *Sandoval-Lua* concluded that "an inconclusive record of conviction is sufficient to demonstrate an alien petitioner was not 'necessarily' convicted of the generic crime." *Id.* at 1132.

But this holding effectively imposed the burden of proof on the government, which is contrary to § 1229a(c)(4)(A).[9] In order for a party to meet the preponderance of the evidence standard, the party must show that "the existence of a fact is more probable than its nonexistence." *Kennedy v. S. Cal. Edison Co.*, 268 F.3d 763, 770 (9th Cir. 2001) (quoting *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)) (internal quotation marks omitted)). Under *Sandoval-Lua*, though, the alien need not meet this burden: it is the government that must show it is more probable than not that the alien was convicted of an aggravated felony.[10] Moreover, *Sandoval-Lua*'s

---

[9]Because *Sandoval-Lua* considered an application for cancellation of removal which was filed prior to the effective date of the REAL ID Act, the panel explicitly declined to consider the effect of § 1229a(c)(4). 499 F.3d at 1132 n.10.

[10]Given the language added by the REAL ID Act, it is clear that Congress did not intend to relieve the alien of the burden of proof. *Sandoval-Lua* has been rejected by two circuits as contrary to the plain language of the cancellation of removal statute. *See Salem v. Holder*, 647 F.3d 111, 119 (4th Cir. 2011) ("With respect for our colleagues on the . . . Ninth Cir-

approach of shifting the burden by implication has the perverse effect of encouraging aliens to conceal relevant evidence. *See Rosas-Castaneda v. Holder*, 655 F.3d 875, 880, 884-85 (9th Cir. 2011) (holding that an alien could satisfy the burden of proving eligibility for cancellation by refusing to provide documents that would prove ineligibility for relief).

Judge Fletcher claims that *Sandoval-Lua* "plac[es] the burden of proof squarely on the applicant for cancellation of removal." Fletcher dissent at 11301. This is true only if we redefine what it means to carry a burden of proof so that it means not carrying it. Indeed, Judge Fletcher effectively admits as much, arguing that the burden should be on the government because it is "in the better position to obtain the evidence," Fletcher dissent at 11299, and citing cases involving "[g]eneral burden-shifting principles," *United States v. Cortez-Rivera*, 454 F.3d 1038, 1041 (9th Cir. 2006). But such practical considerations and general principles cannot trump the plain language of a statute that clearly directs otherwise.

*Sandoval-Lua* (and Judge Fletcher) go to great lengths to avoid the unfairness of saddling an alien with both the burden of proof and evidentiary limitations. *See* Fletcher dissent at 11298-11301. I agree that Congress could not have intended this result. But it is equally improper to ignore the plain language of the statute, which puts the burden of proof on the alien. The solution, of course, is to apply the statute as it is written, applying both § 1229a(c)(4)(B), which sets forth a

---

cuit[ ], we believe that . . . *Sandoval-Lua* elide[s] the clear statutory language of the INA establishing the noncitizen's burden in relief-from-removal proceedings."); *Garcia v. Holder*, 584 F.3d 1288, 1290 (10th Cir. 2009) ("We agree with the BIA that [the *Sandoval-Lua*] approach effectively nullifies the statutorily prescribed burden of proof."). *But see Martinez v. Mukasey*, 551 F.3d 113, 121 (2d Cir. 2008) (approving a "straightforward application of the categorical approach" to cancellation without any consideration of the statutory language).

broad range of permissible evidence, and § 1229a(c)(4)(A), which imposes the burden of proof on the alien.

III

In the end, the analysis should be simple. The plain language of § 1229a(c)(4)(B) requires the alien to carry the burden of proving eligibility for cancellation of removal, including proving that the alien had not previously been convicted of an aggravated felony. Although a court must use the Supreme Court's categorical and modified categorical tool to determine if the prior conviction qualifies as an aggravated felony, this tool does not impose evidentiary limitations where the statute says otherwise, as it does here.

In arguing otherwise, Judge Fletcher's dissent would adopt the approach first set forth in *Sandoval-Lua*, which imposes the evidentiary limitation set forth in *Shepard*, but shifts the burden of proof to the government. As made clear above, both of these interpretations are contrary to the statute.

But at least Judge Fletcher's opinion has the virtue of being logical, even if it is inconsistent with the statutory language. It is Judge Graber's opinion that reaches a result that could never have been intended by Congress. Contrary to the opinion, the result it reaches is "absurd." *Cf.* Graber opinion at 11296. Judge Graber's approach would give the alien the statutory burden of proof, but ignore the statute's evidentiary provisions and unfairly impose the strict evidentiary limitations of the ACCA enhancement analysis. Under this framework, an alien who has not been convicted of an aggravated felony is subject to the vagaries of state and local court recordkeeping systems and has only the hope that the relevant documents can be found (assuming they exist). If the limited documents allowed under *Shepard* do not resolve the question, the alien has no recourse. A fair reading of the applicable statutes establishes that Congress did not intend such an inequitable result. *Cf. Nijhawan*, 557 U.S. at 41 (assuming that Congress

intended the use of "fundamentally fair procedures, including procedures that give an alien a fair opportunity to dispute a Government claim that a prior conviction" constituted an aggravated felony).

The oddities of our division have now saddled us with a ruling with which nine judges disagree and which departs from the language of the statute in a way that most seriously disadvantages the alien. I do not join this result.